**LUTCHER S.A. CELULOSE E PAPEL CANDOI, PARANA, BRAZIL, and F. Lutcher Brown, Candoi, Parana, Brazil, Plaintiffs,**

v.

**INTER-AMERICAN DEVELOPMENT BANK, Defendant.**

**Civ. A. No. 573-66.**

United States District Court
District of Columbia.

March 28, 1966.

William W. Rayner, Washington, D. C., for plaintiffs.

William D. Rogers and Richard B. Sobol, Washington, D. C., for defendant.

GASCH, District Judge.

This cause came on for hearing on plaintiffs' motion for preliminary injunction and defendant's motion to dismiss. Plaintiffs seek to enjoin the Inter-American Development Bank from augmenting a loan to one of plaintiffs' competitors. The loan would facilitate the development of a pulp mill in Brazil. Plaintiffs are engaged in a similar business and contend that the market will not support two mills. Plaintiffs further contend that the Bank has ignored certain alleged market conditions and that if consummated, the additional loan to plaintiffs' competitor would not be a prudent act.

Defendant's motion to dismiss is predicated upon two points: (1) the Bank is immune from suit, such as the one filed in the instant case; and (2) the complaint does not state a claim upon which relief can be granted. For the reasons hereinafter set forth, the Court agrees with both of defendant's contentions.

The International Organizations Immunities Act provides, in part:

"International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit in every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract." [1]

An Executive Order of President Eisenhower dated April 8, 1960, designated the Inter-American Development Bank as a public international organization which would be entitled to the immunities and exemptions flowing from the above-quoted statute.[2] A subsequent Executive Order promulgated by President Kennedy provided that the first Executive Order should not be construed as affecting a certain provision of the Bank's Charter:

"Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.

"No action shall be brought against the Bank by members or persons acting for or deriving claims from members. However, member countries shall have recourse to such special procedures to settle controversies between the Bank and its members as may be prescribed in this Agreement, in the by-laws and regulations of the Bank or in contracts entered into with the Bank.

"Property and assets of the Bank shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank."

These pronouncements of executive policy and the Bank's position on its amenability to suit should be considered as important factors relating to the existence of jurisdiction of this Court in the instant case.

The Supreme Court has recognized that sovereign immunity has become part of the fabric of our judicial system through the adjudications of the courts.[3] While there is nothing in the Constitution on the subject, it was early recognized that the dignity and standing of foreign sovereigns could be preserved and maintained by not subjecting them or their agents to the jurisdiction of the United States Courts.[4] When a suit filed in a court of law could conceivably involve delicate matters of international relations, the courts should recognize

1. 22 U.S.C. § 288a(b).

2. Executive Order 10873, 3 C.F.R. 404 (1959–1963 Comp.).

3. National City Bank v. Republic of China, 348 U.S. 356, 358, 75 S.Ct. 423, 99 L.Ed. 389 (1955).

4. The Schooner Exchange v. M'Fadden, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812).

that under our Constitution such matters are confided to the judgment and discretion of the Executive Branch of the Government.[5] Plaintiffs argue that the Bank has been sued in previous situations: where a customer fell on the floor,[6] where there was an alleged breach of a contractual relationship with a coffee shop,[7] and where workmen's compensation was involved.[8] However, situations comparable to the one with which the Court is confronted are clearly distinguishable for the reason that cases involving the discretion and judgment of the Bank's governing board in matters of economic policy closely associated with consideration of international politics are vastly different from cases involving simple torts and contracts. Where delicate, complex issues of international economic policy are involved, jurisdiction should be denied.

▉▉ Assuming *arguendo* that this Court does have jurisdiction, it is highly questionable whether even a domestic bank could properly be sued by one of two competing customers who alleged that the Bank had imprudently loaned money to the second customer and thereby made more difficult the customer's obligation to respond. Here, it is clear that the situation with which the Court is confronted in this complaint is even more lacking in merit in the judicial sense. Plaintiffs' standing to raise the issues on which they rely is by no means established irrespective of the foreign policy consideration.[9] Counsel does not urge that there is any clause of the contract between plaintiffs and the Bank which specifically concerns the matter of limiting possible competition. He relies on implication. The contract provides for the ultimate sale of Twenty-five Percent (25%) of plaintiffs' stock. Plaintiffs contend that the Bank is required to act prudently in other matters so that the plaintiffs' stock will be marketable. Plaintiffs also complain about repayment features of the loan. In the opinion of the Court, none of these contentions are sufficient to establish an implied contract guaranteeing plaintiffs what amounts to a virtual monopoly in the borrowing of the Bank's funds to establish a pulp mill in Brazil. Furthermore, where the contract between the parties is detailed and specific, as in the instant case, the courts will not improvise an implied contract.[10]

Plaintiffs have failed to demonstrate irreparable injury or the probability of ultimate success.

▉ Although counsel for the Bank has not raised the question of an indispensable party, nevertheless, the Court notes that the competing customer (the Klabin group) is not before the Court. This familiar doctrine alone would preclude the taking of such action as is sought by the plaintiffs in that it would be highly prejudicial to this missing indispensable party.[11]

For these reasons, plaintiffs' motion for preliminary injunction should be and is denied, and defendant's motion to dismiss is granted.

5. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L. Ed. 255 (1936).

6. Schutz, et al. v. Ship Shape Maintenance Corp., et al., 2860–65.

7. 808 Coffee Shop v. Inter-American Development Bank, 3202–65.

8. Commerce Insurance Company of Newark, N. J. v. Red Coats, Inc., 2267–64.

9. Alabama Power Company v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); Kansas City Power & Light Company v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924 (D.C.D.C.1955), cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L. Ed. 780 (1955).

10. Roebling v. Dillon, 109 U.S.App.D.C. 402, 288 F.2d 386 (1961), cert. denied 366 U.S. 918, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961); Fort Sill Gardens, Inc. v. United States, 355 F.2d 636 (Ct.Cl.1966).

11. Lumbermen's Mutual Casualty Company v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59 (1954).